IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOHAMMED MAHRAN, ) | |
| ) | Case No. 17-cv-05730 |
| Plaintiff, ) | |
| ) | |
| vs. ) | Judge Sara L. Ellis |
| ) | |
| ADVOCATE HEALTH AND HOSPITALS ) | |
| CORPORATION, an Illinois not-for-profit ) | |
| Corporation, and ADVOCATE CHRIST ) | |
| MEDICAL CENTER, an Illinois not-for- ) | |
| profit Corporation, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS ADVOCATE HEALTH AND HOSPITALS CORPORATION
AND ADVOCATE CHRIST MEDICAL CENTER'S MEMORANDUM
<u>OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Defendants Advocate Health and Hospitals Corporation and Advocate Christ Medical Center (collectively, "Advocate"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, submit the following Memorandum of Law in Support of their Motion for Summary Judgment in relation to the Complaint of Plaintiff Mohammed Mahran ("Mahran"):

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Mahran (Egyptian, Muslim) became a licensed pharmacist in Egypt in the late 1990s and worked in medical representative and marketing manager roles mostly abroad through 2011. (Facts ¶ 7.) Pharmacy Director Rolla Sweis (Jordanian, Orthodox) offered to sponsor Mahran for a pharmacy internship as he worked toward becoming licensed in Illinois in 2012-2013, and eventually hired him as a registry pharmacist on November 18, 2013 reporting to Pharmacy Manager Judith Brown-Scott (African American, Christian). (Dkt. No. 1/Compl., ¶ 8; Facts ¶¶ 8-11.) Sweis estimates that 80 percent of the 150-60 members of the Pharmacy Department is diverse, 90 percent of whom are Middle Eastern and 30-45 who are Muslim. (Facts ¶ 14.)

1

Mahran rotated between the central pharmacy verifying orders and checking and dispensing patients' medications or in a decentralized role verifying orders and performing clinical activities on the floors. (Facts ¶ 24.) He was required to have a pharmacy degree and license, and his position required him to utilize the knowledge he acquired during his training and education as a pharmacist to make independent decisions of significance. (*Id.* ¶¶ 22, 23.) Upon hire, Mahran received six weeks of initial training and additional coaching and mentoring on more complicated orders. (*Id.* ¶ 25.) Mahran claims he was given insufficient hours of Intensive Care Unit ("ICU") training that "everyone" else was given; he was not an ICU pharmacist so he would not have received specialized ICU training (*Id.* ¶¶ 26-27). During his training, Mahran believes two of his co-workers treated him unfairly (he did not know if they treated others the same way), which he reported to management as discriminatory and which resulted in management talking to and coaching these individuals. (*Id.* ¶¶ 28, 29.)

Mahran became full-time on April 20, 2014, and after asking Sweis about his rate of pay, received a retroactive increase to $51.75 per hour. (*Id.* ¶¶ 76, 81.) Two of the individuals (one of whom Mahran identifies as Muslim) Mahran complains were hired before him had worked registry prior, and the others (hired at the same initial pay rate) had recent hospital experience unlike him. (*Id.* ¶¶ 33-36.) Mahran was paid bi-weekly based on his annualized salary without deductions to his pay based on the quantity or quality of his work. (*Id.* ¶ 86.) After Mahran left, pharmacists received "bonus pay" to incentivize them to take additional shifts. (*Id.* ¶¶ 84, 86.)

During Mahran's employment, he was coached and disciplined on multiple occasions for the way in which he verified (or failed to verify) orders. (*Id.* ¶¶ 25, 41, 43, 47, 50, 52, 56, 67.) As early as his first performance review in February 2014, he was "encouraged to develop his inpatient pharmacist skills in order to better oversee drug therapy for a large, acute care facility."

(*Id*. ¶ 32.) In August 2015, he received a Level I warning for failing to verify an order for a lung transplant patient when frustrated with a colleague. (*Id*. ¶ 41.) In early April 2016, he received an overall rating of "Approaching Expectations" in his annual review, a Level 3-Final warning for failing to verify a more complicated order, and a Performance Deficiency Notice ("PDN") for switching out of his assigned area and cherry picking easier orders. (*Id*. ¶¶ 50-52, 54-56.)

Mahran began e-mailing Human Resources after he received the April 2016 review and warning complaining of discrimination and retaliation. (*Id*. ¶¶ 59, 62, 69, 71.) Human Resources and his managers had a number of meetings with him to discuss his concerns; HR investigated his allegations and was unable to conclude that any policies had been violated with respect to his treatment at Advocate. (Facts ¶¶ 59-62, 65-66.) Nevertheless, HR removed the Level 3 so the behaviors could be addressed through the PDN. (*Id*. ¶ 54.)

Mahran received a second Level 3-Final Warning on May 4, 2016, this time for leaving the pharmacy before the relief pharmacist arrived to cover his shift (conduct which management believes could cost the hospital its pharmacy license) and without performing a proper hand-off to the incoming pharmacist. (*Id*. ¶ 61.) Mahran eventually was terminated on June 24, 2016 for failing his PDN. (*Id*. ¶ 72.) Three other pharmacists outside of Mahran's protected class were also placed on PDNs (two of whom cherry-picked orders and one of whom was the colleague with whom Mahran was frustrated) and were either terminated or resigned. (*Id*. ¶¶ 36, 46, 58.)

Mahran complains he was denied the ability to take a prayer break in March 2016 and that another pharmacist told him that a manager had told him to "pass the message" that Muslim pharmacists were not allowed to pray or take a prayer break. (*Id*. ¶ 95). Mahran prayed on his lunch break that day in March and was not aware of the breaks of all associates. (*Id*. ¶ 105.) None of Mahran's managers directly prevented him from taking a prayer break, and there are

3

multiple areas in the hospital where individuals can pray. (*Id.* ¶ 104.) Mahran also claims he was denied time off for his religious holidays (which his religion does not prevent him from working); the one time he could show he was denied, it was because the maximum number of pharmacists were off that day (including 5 Muslim pharmacists). (*Id.* ¶ 116-117.)

On May 6 and July 19, 2016, Mahran filed Charges of Discrimination with the Illinois Department of Human Rights ("IDHR") (Facts ¶¶ 3, 4.) This suit followed on August 17, 2017.

## II.     ARGUMENT

### A.     Mahran's Hostile Work Environment Claims Fail (Counts I, II, VI, VII).

Mahran's allegations that he was subjected to a hostile work environment based on his religion (Muslim) and ethnicity and national origin (Middle Eastern) in violation of Title VII and the IHRA (Dkt. No.1/Compl. at Counts I, II, VII) and based on his "race and/or national origin, Egyptian" in violation of Section 1981 (*id.* at Count VI) cannot survive summary judgment.[1]

#### 1.     Mahran's Title VII Hostile Work Environment Claims Are Barred.

Mahran's Title VII claims are barred as Mahran did not receive or allege that he received any Notices of Right to Sue from the EEOC when he filed the instant lawsuit on August 7, 2017. (Facts ¶¶ 3, 4.) *See Ahr v. Commonwealth Edison Co.*, No. 03 C 6645, 2005 WL 6115023, at *4 (N.D. Ill. Feb. 24, 2005) (plaintiff must plead exhaustion and exhaust administrative remedies).[2]

#### 2.     Mahran Cannot Establish a Hostile Work Environment Claim.

To survive summary judgment, Mahran must show: (1) he was subjected to unwelcome harassment; (2) the harassment was based on a protected class; (3) the conduct was severe or

---

[1] Courts analyze harassment claims under these statutes using the same framework. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) (Title VII and Section 1981 harassment claims); *Hoosier v. Greenwood Hosp. Mgmt. LLC*, 32 F. Supp. 3d 966, 975 (N.D. Ill. 2014) (IHRA and Title VII harassment claims).
[2] Also, many of Mahran's complaints (e.g., pay, training and failure to be hired full-time (2013), treatment by other pharmacists (2013-14), inappropriate comments (2014-15) (Facts ¶¶ 25-28, 87- 92)) are time-barred as they occurred more than 180 days prior to his May 6, 2016 Charge (i.e., before November 8, 2015). 775 ILCS 5/7A-102.

pervasive so as to alter the terms and conditions of employment; and (4) there is a basis for employer liability. *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 561 (7th Cir. 2016).[3]

### (a) Mahran Cannot Show An Objectively Offensive Environment.

Setting aside whether Mahran can show a subjectively offensive work environment[4], a workplace presents an objectively hostile work environment only if it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). Courts consider the following in this analysis: "(1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim." *Nichols*, 755 F.3d at 600.

Mahran predicates his hostile environment claims on two types of alleged conduct: (i) offensive comments; and (ii) disparate treatment in the form of adverse employment actions and denial of "adequate training, promotions, equal pay and vacation time" (Dkt. No. 1/Compl. ¶¶ 92-93), neither of which creates an objectively offensive work environment as a matter of law.

### (i) The Isolated Comments Are Not Actionable.

Mahran alleges: (1) Sweis in 2015 told him that they prioritized orders differently here than in Egypt, (2) Brown-Scott told him in 2014 there was no racial discrimination, stating: "you see I am African-American", (3) a coworker in 2015 commented about not attending a "marriage

---

[3] The Court in *Cole v. Bd. of Trustees of N. Ill. Univ.*, 838 F.3d 888, 896 n.6 (7th Cir. 2016), noted that the Seventh Circuit sometimes replaces the first prong with the requirement that the work environment was "both subjectively and objectively offensive", further explaining:"[i]n the end, the inquiry is the same." *Id.* (citations omitted).

[4] Mahran does not allege or establish that the alleged conduct materially altered his work environment. *See McDade v. YRC Worldwide, Inc.*, No. 14 cv 1500, 2017 WL 4046345, at *9 (N.D. Ill. Sep. 13, 2017) (harassment claim failed where plaintiffs did not discuss whether the conduct was intimidating or "how it affected their work performance.").

of brown people" (outside of Mahran's presence)[5], (4) an evening supervisor (Boyle) told him in March 2016 he could not take a prayer break, and (5) a pharmacist told him in 2015 that another manager (Milicev) said to pass the message that Muslim pharmacists could not pray or take a prayer break. (Facts ¶¶ 87, 90, 92, 95.) These comments do not constitute actionable harassment.

The first two comments fail to evince animosity based on national origin where Sweis was explaining a procedural difference and Brown-Scott was sharing her own experience. *See Poullard v. McDonald*, 829 F.3d 844, 858 (7th Cir. 2016) (comments about "get[ting] the monkeys off the backs of management", understood in context, were insufficient). And, none of the comments are sufficient to constitute actionable harassment as the Seventh Circuit has found that even the "one time use of a racial epithet is not severe enough to trigger liability." *Nichols*, 755 F.3d at 601; *see also Cole*, 838 F.3d at 897 (plaintiff discovered a noose on one occasion). This is especially true given that the comments are not close in time (or related) to employment decisions related to Mahran, who was terminated in June 2016. (Facts ¶¶ 74, 87, 90, 92-93.)

Also, the comments alleged to have been made by Boyle (who was not a supervisor or Mahran's manager) did not result in Mahran not being able to pray. (*Id.* ¶¶ 14, 105.) The alleged comments by Milicev (who was not Mahran's manager—*see Williams v. Arrow Chevrolet, Inc.*, 121 F. App'x 148, 150 (7th Cir. 2005) (comment by a manager which was not directed at plaintiff insufficient to establish hostile environment))—and his co-worker are inadmissible hearsay statements. *See Whittaker*, 424 F.3d at 645 (no hostile environment where "most of the conduct that forms the basis of [a plaintiff's] claim consists of derogatory statements made by supervisors or co-workers out of her hearing….") (citations omitted); *Gunville v. Walker*, 583

---

[5] Mahran also alleges another coworker in late 2015 used condescending language but does not tie the alleged language to any protected characteristic; this individual was coached and it did not happen again. (Facts ¶¶ 47-49.)

F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment.").[6]

Finally, there is no evidence that the comments inhibited Mahran from performing his work (Facts ¶¶ 37, 39, 80) or "occurred with such regularity that they altered the terms and conditions" of his employment. *See Zegarra v. John Crane, Inc*., 218 F. Supp. 3d 655, 668 (N.D. Ill. 2016).

                (ii)      Mahran Cannot Show Disparate Treatment.

As a threshold issue, Mahran's complaints about training, vacation, and discipline short of discharge (Facts ¶¶ 26, 41, 50, 56, 61, 117) do not constitute adverse employment actions. *See Burton*, 851 F.3d at 696 ("[W]ritten reprimands without any changes in the terms or conditions of [an employee's] employment are not adverse employment actions.") (quotation omitted). And, none of his disparate treatment complaints rise to the level of constituting actionable harassment:

*Training*. Mahran did not require specialized ICU training to do his job and admits he received some ICU training. *Perez v. City of Batavia*, No. 98 C 8226, 2004 WL 2967153, at *16 (N.D. Ill. Nov. 22, 2004) (plaintiff's claim he was denied training fell short of adverse action where the training was unnecessary to his job). Also, Mahran claims that "[e]very other pharmacist" received this training and that he did not know if two of the individuals who mistreated him during training treated non-Muslims the same way. (Facts ¶¶ 26, 28). *See Marine v. H.J. Mohr & Sons, Co.,* No. 04 C 2989, 2005 WL 2293673, at *10 (N.D. Ill. Sep. 19, 2005) (no evidence plaintiff was singled out for denial of vacation pay). Thus, this claim fails.

*Promotions*. Mahran neither alleges nor presents evidence that he applied for any promotions. (Dkt. No. 1/Compl.) *See Jaburek v. Foxx*, 813 F.3d 626, 631-32 (7th Cir. 2016)

---

[6] The alleged comments made by Sweis and Brown-Scott were not reported to Advocate or even included in his first Charge. (Facts ¶¶ 91, 92, 95, 108). *See Bernier v. Morningstar, Inc*., 495 F.3d 369, 375 (7th Cir. 2007) (no liability where employer had no notice of alleged harassment).

7

("[Plaintiff] has not shown that the FAA rejected her from the position of Program Analyst because she never applied for the position"). Regarding the timing of his full-time hire, two of the pharmacists hired shortly before him had recent hospital experience (unlike Mahran) and the other two (one of whom he identifies as Muslim) had worked registry first (like him). (Facts ¶¶ 34, 35.) *See Downes v. Dist. 97 Oak Park Pub. Sch.*, No. 98 CV 5574, 2000 WL 422232, at *7 (N.D. Ill. Apr. 13, 2000) (hiring custodians with greater experience was not discriminatory).

*Pay*. Mahran was hired at the same rate of pay as his alleged comparators; thus, he cannot complain of pay discrimination. (Facts ¶¶ 76-77, 81.) With respect to his claim that other pharmacists received overtime pay (*Id*. ¶¶ 84-85), several of these individuals he identifies as Muslim—*see Jordan v. City of Gary, Ind.*, 396 F.3d 825, 834 (7th Cir. 2005) (plaintiff must show that the person treated more favorably was outside his protected class)—and Mahran has no evidence that they did. Also, the admissible evidence shows that the additional pay consisted of an incentive bonus payment that was implemented after Mahran left. (Facts ¶ 85.)

*Vacation*. Mahran has no evidence that he was denied vacation time based on his national origin or religion. *Marine*, No. 04 C 2989, 2005 WL 2293673, at *10 (no evidence plaintiff was singled out for denial of vacation pay). Indeed, he was granted the time off in 2015 that he requested for his religious holidays. (Facts ¶ 113.) Also, five (5) Muslim pharmacists had the religious holiday off in the summer of 2016 (typically already a busy time) that Mahran was denied due to the maximum number of pharmacists being off. (*Id*. ¶¶ 115-116.) *See Hunter v. St. Francis Hosp.*, 281 F. Supp. 2d 534, 544 (E.D.N.Y. 2003) (employer concern that allowing two people off at same time would cause understaffing was legitimate non-discriminatory reason for denying plaintiff's vacation request). And, the evidence shows non-Egyptians and non-Muslims

8

were denied time off. *See Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 931 (7th Cir. 1993) (random pattern not evidence of racial discrimination).

*Adverse Employment Actions*. Mahran adduced no facts demonstrating that other similarly situated employees shared a similar record of misconduct, performance, qualifications or disciplining supervisors such that any different treatment (which he cannot show in any event) reflects a discriminatory intent by Advocate. *See Johnson v. Holder*, 700 F.3d 979, 982 (7th Cir. 2013) (plaintiff "failed to provide sufficient evidence of a similarly situated employee."). Moreover, Mahran does not know why Brown-Scott took certain action (Facts ¶ 41), and there is evidence of non-Muslim, non-Egyptian and non-Middle Eastern pharmacists whose employment ended for similar issues. *See Bosley v. Rush Prudential Health Plans*, No. 99-3669, 2000 WL 622883, at *3 (7th Cir. 2000) (summary judgment granted where employees outside plaintiff's protected class resigned due to poor performance).

### (b) Mahran Cannot Show Any Harassment Was Based on Race, National Origin, Ethnicity, or Religion.

Apart from his subjective belief, Mahran cannot connect his protected characteristics to the actions about which he complains, particularly where he has no evidence of similarly situated employees who were treated better or comments by his managers close in time to the legitimate decisions made about his employment. Sections II(A)(2)(a)(i)-(ii) *supra*. *See also Bullock-Banks v. Am. Water Works Serv. Co.*, No. 1:03-cv-01459, 2005 WL 1126839, at *6 (S.D. Ind. May 12, 2005) (plaintiff's subjective belief "is not sufficient to prove a racial purpose.").

### (c) There Is No Basis For Employer Liability.

Advocate maintains and trains employees on EEO, anti-harassment and nondiscrimination policies, and notwithstanding Mahran's failure to report the inappropriate comments about which he now complains (*see Bernier*, 495 F.3d at 375 (no liability where

employer did not have notice of alleged harassment)), investigated and remediated those complaints Mahran did bring forward. (Facts ¶¶ 16-17, 59-62, 65-66, 70, 91, 108.) Both management and HR looked into his complaints, met with Mahran, and took prompt, remedial action. (Facts ¶¶ 29, 60, 65-66.) Advocate even coached co-workers Mahran complained about; one of these individuals similarly was placed on a PDN and later resigned. (Facts ¶¶ 28-29, 46-47, 87-88.) *See Otero v. City of Chicago*, No. 10 CV 2284, 2013 WL 530977, at *7 (N.D. Ill. Feb. 6, 2013) (employer can avoid liability for harassment where it take prompt and appropriate corrective action) (citing *Vance v. Ball State Univ.*, 646 F.3d 461, 471 (7th Cir. 2011)).

### B. Mahran's Disparate Treatment and Retaliation Claims Fail.

Mahran cannot show that a reasonable factfinder could conclude that his protected characteristics or any retaliation caused his termination or any other alleged adverse action. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

#### 1. Mahran's Disparate Treatment Claims Fail (Counts IV, V, VII).

Mahran's Title VII claims are procedurally barred (*supra* Section II(A)(1)) and his Section 1981 claim is styled as "Hostile Work Environment and Discriminatory Harassment" (Count VI); thus, any disparate treatment claims under these statutes fail. To the extent the Court finds otherwise or that Mahran has a claim under the IHRA (Count VII), these claims still fail.

##### (a) Mahran Does Not Have a Prima Facie Case of Discrimination.

Mahran cannot establish discrimination under *McDonnell Douglas*, which requires that he show: (1) he is a member of a protected group; (2) he met Advocate's legitimate expectations; (3) he suffered an adverse employment action; and (4) Advocate treated similarly situated persons outside the protected group more favorably. *See McDonnell Douglas Corp. v. Green*,

10

411 U.S. 792, 802 (1973).[7] The burden then shifts to Advocate to demonstrate "a legitimate, non-discriminatory reason for the action", after which Mahran must establish pretext. *Id.* at 802.

### (i) Mahran Did Not Meet Legitimate Expectations.

Mahran had a history of performance and behavioral issues concerning the way in which he verified (or failed to verify) certain orders and interacted with other pharmacists, which was well-documented and discussed with him during his employment. (Facts ¶¶ 32, 41, 50, 54-56.) *See Garcia v. City of Chicago*, No. 10 cv 3277, 2012 WL 12895304, at *16 (N.D. Ill. Nov. 5, 2012) (plaintiff's performance issues were communicated through evaluations, performance plans and discipline). Mahran's "self-serving" allegations that he disagreed with these actions are insufficient to overcome such well-documented issues. *See Bosley*, 2000 WL 622883, at *3.[8]

### (ii) Not All of the Actions Complained of Are Adverse.

[N]ot everything that makes an employee unhappy is an actionable adverse action." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009). Mahran cannot show with respect to his training, vacation, reviews, PDN or discipline any "quantitative or qualitative change in the terms or conditions of his employment." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003); *see also Peters v. Wal-Mart Stores East, LP*, 512 Fed. App'x 622, 627 (7th Cir. 2013) ("negative evaluations" insufficient); *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (denial of leave requests when work was backlogged was not adverse action).

### (iii) Mahran Has No Evidence of Similarly Situated Employees Who Were Treated More Favorably.

As set forth *supra* Section II(A)(2)(b), Mahran presents no evidence of similarly situated employees outside of his protected classifications who were treated more favorably. *See Chaib v.*

---

[7] The Seventh Circuit's ruling in *Ortiz* "does not concern *McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand." *Ortiz*, 834 F.3d at 766.
[8] Also, he received training commensurate with his role; a promotion to a full-time position consistent with his background and training; and was paid based on his license date commensurate with his comparators. *Supra* Section II(B)(1)(b).

11

*Indiana*, 744 F.3d 974, 984 (7th Cir. 2014). He was paid more than his alleged comparators; he identifies Muslim and/or Middle Eastern employees who were not disciplined and who received training, promotions and vacation time he claims he did not receive; and at least three employees (none of whom he identifies as Egyptian, Middle Eastern or Muslim) with similar performance issues were either terminated, resigned and/or placed on PDNs. (Facts ¶¶ 36, 46, 58.) *Bosley*, 215 F.3d 1329 (employees of the same race resigned due to poor performance).

### (b) Advocate Has Legitimate, Nondiscriminatory Reasons.

Mahran was disciplined and terminated due to his well-documented performance and behavioral issues (Facts ¶¶ 32, 41, 50-52, 54-56, 61, 72), which are legitimate, non-discriminatory reasons. *Everroad v. Scott Truck Sys.*, 604 F.3d 471, 478 (7th Cir. 2010). Also, he (1) was paid in accordance with his license date (which is how Advocate determines pay), (2) received training commensurate with his role, (3) was denied vacation time due to the number of pharmacists (including pharmacists he identifies as Muslim) off under a valid seniority system, and (4) was hired into a full-time role once he obtained hospital experience. (Facts ¶¶ 25-27, 31, 37, 79, 109, 116.) *See Morgan v. SVT, LLC*, 724 F.3d 990, 998 (7th Cir. 2013) (reasonable, non-suspicious explanations for termination existed).

### (c) Mahran Has No Evidence of Pretext.

"Pretext . . . does not mean a mistake, but 'a phony reason for some action.'" *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 640 (7th Cir. 2001) (quotation omitted). Apart from his self-serving allegations, Mahran admits he does not know why certain actions were taken against him (Facts ¶¶ 26, 41) and has no evidence that any of the reasons for these actions were "a lie or completely lack[ing] a factual basis." *Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000). [9]

---

[9] Nor does the fact that Mahran appears to be the only person he identifies as Egyptian establish pretext. *See Loving v. Lew*, 512 Fed. Appx. 616, 619 (7th Cir. 2013) (being the only black employee insufficient to show racial animus).

### 2. Mahran's Retaliation Claims Fail (Counts III, VIII).

Mahran alleges retaliation under Title VII (which is procedurally barred (*supra* Section II(A)(1))), and the IHRA for complaining about harassment starting in 2013 and filing his May 6, 2016 IDHR charge, which requires him to show[10]: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) a causal link exists between the two. *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011).

#### (a) Not All of the Actions Complained of Are Adverse.

Mahran cannot identify specific, timely adverse actions he allegedly suffered as a result his complaints. *Supra* Section II(A)(2) & n.2, 8. *See Porter v. Pipefitters Ass'n Local Union 597, U.A.*, No. 12-cv-9844, 2013 WL 5162206, at *3 (N.D. Ill. Sep. 12, 2013) (plaintiffs failed to identify any retaliation or adverse action taken against them). Indeed, Mahran claims *after* he complained about discrimination, he was given a full-time role. (Facts ¶ 37.) *See Morrill v. Nielsen*, No. 17-CV-3419, 2018 WL 3141798, at *13 (N.D. Ill. June 27, 2018) (no causal connection where plaintiff was promoted a month after he complained).

#### (b) There Is No Causal Link.

Mahran cannot establish a causal link between his alleged complaints to management dating back to 2013 (notably, which are vague—*see Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013) ("Vague and obscure 'complaints' do not constitute protected activity.")) and his termination on June 24, 2016. The fact that Mahran's employment continued for more than two years after these alleged complaints defeats a claim of retaliation. *See Tripplett v. Ill. Dep't of Human Servs.*, 2008 WL 4876990, at *9 (N.D. Ill. Aug. 19, 2008) (finding a one-month gap insufficient). Moreover, Mahran has no evidence that his managers harbored any animus

---

[10] Only Mahran's second charge (filed on July 19, 2016) mentions retaliation. (Facts ¶¶ 3-4.) Thus, he cannot complain under Title VII about actions occurring more than 180 days prior; i.e., on or before January 21, 2016. *Supra* n. 2.

toward him based on these complaints, particularly where he received a full-time position after making one complaint, received "meets expectations" reviews and raises, and exchanged numerous positive emails with his managers. (Facts ¶¶ 37-39, 40, 80-81, 83.)

Mahran's argument that his May 6, 2016 Charge motivated his termination a month and a half later is a non-starter. He was placed on the PDN and issued all of his written discipline *prior* to filing this charge (Facts ¶¶ 42, 50, 56, 61)—*see Silk v. Bd. of Trs.*, 46 F. Supp. 3d 821, 835 (N.D. Ill. 2014) (summary judgment granted to employer where it showed the actions preceded plaintiff's complaints) (reversed in part on other grounds). And, notwithstanding the fact that a one-month gap is insufficient, "[e]vidence of temporal proximity, however, standing on its own, is insufficient to establish a causal connection for a claim of retaliation." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008). This is particularly true here where Mahran was given multiple attempts to improve his performance before. *See Brown v. McDonald*, No. 13-cv-705-bbc, 2014 WL 6893872, at * 11 (W.D. Wis. Dec. 5, 2014) (no suspicious timing where supervisor recommended discipline two weeks before plaintiff complained to the EEOC).

### (c) Advocate Has Credible, Non-Pretextual Reasons.

Moreover, as established in Sections II(B)(1)(b) *supra*, Advocate presented credible non-retaliatory reason for its actions, and Mahran cannot show that these reasons were pretext and thus that an intent to retaliate was the but-for cause of his termination (or any other actions taken against him). *See Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017) ("the true question" of a causal link between a protected activity and an adverse action is "whether the proffered reasons were a pretext for retaliation"). Thus, his retaliation claim fails.

### 3. Mahran's Common Law Retaliation Claim Fails (Count IX).

In addition to the arguments set forth *supra* Section II(B)(2), Mahran's common law retaliatory discharge claim alleging he was terminated because he complained of discrimination

14

is conduct covered by the IHRA and thus pre-empted by the IHRA. 775 ILCS 5/6-101. *See Spring-Weber v. City of Chi.*, No. 16 C 8097, 2017 WL 1316267, at *9 (N.D. Ill. Apr. 10, 2017) (citing *Geise v. Phoenix Co. of Chicago,* Inc., 639 N.E.2d 1273, 1276 (1994)).[11]

### C. Mahran Cannot State a FLSA Claim (Count V).

Mahran's claim he was denied overtime in violation of Section 7 of the FLSA fails because, at a minimum, his role as a pharmacist falls within the learned professional exemption.[12] 29 C.F.R. §§ 541.300, 301. *First*, he was compensated on a salary basis in excess of $455 per week, and deductions were not made based on the quality or quantity of his work. (Facts ¶¶ 76, 80-81, 86.) *See* 29 C.F.R. § 300(a)(1). *Second*, Mahran's work as a pharmacist required advanced knowledge in a field of science or learning. (Facts ¶ 22.) *See* 29 C.F.R. § 541.300(a)(2)(i), 301(a)-(c) ("the phrase 'field of science or learning' includes the traditional professions of [...] pharmacy [...]".). *Third*, Mahran testified that, on his own, he made significant and independent decisions requiring discretion and judgment during his work as a pharmacist. (Facts ¶ 22.) *See* 29 C.F.R. 301(b); *De Jesus-Rentas v. Baxter Pharm. Servs. Corp.*, 400 F.3d 72, 75 (1st Cir. 2005) (pharmacists contacted physician when they determined a drug was contraindicated and to discuss whether medication needed modification). *Fourth*, Mahran's work as a pharmacist was acquired by a prolonged course of specialized intellectual instruction that was required in his role. (Facts ¶ 22.) 29 C.F.R. § 301(d) ("The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree.").

---

[11] Also, the prohibition of "discrimination in employment on the basis of religion, national origin, or ethnicity" (Dkt. No. 1/Compl. ¶ 20) is not a recognized public policy for purposes of a retaliatory discharge claim. *See Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878-79 (1981) (citing relevant examples of public policy concerns).

[12] Any complaint about his time as a registry pharmacist is also time-barred given he last worked in this role in April 2014, more than three years before he filed his Complaint on August 7, 2017. 29 U.S.C. § 255(a).

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, Advocate respectfully requests that the Court enter summary judgment in its favor, dismiss Plaintiff's Complaint with prejudice, award Advocate its costs in defending this action, and grant such additional relief as the Court deems just and appropriate.

Respectfully submitted,

Dated: July 9, 2018

By: s/ Jill S. Vorobiev
Jill S. Vorobiev (6237734)
Courtney M. Ofosu (6306676)
Reed Smith LLP
10 South Wacker Drive, Suite 4000
Chicago, IL 60606
(312) 207-1000
Email: Jvorobiev@reedsmith.com
Email: Cofosu@reedsmith.com

*Counsel for Advocate Health and Hospitals Corporation and Advocate Christ Medical Center*

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2018, the foregoing **Defendants Advocate Health and Hospitals Corporation and Advocate Christ Medical Center's Memorandum of Law In Support of Motion for Summary Judgment** was filed through the Court's CM/ECF system, which shall send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.

                                                  s/Jill S. Vorobiev
                                                  One of the Attorneys for Defendants Advocate Health and Hospitals Corporation and Advocate Christ Medical Center