# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOHAMMED MAHRAN, | ) |
| Plaintiff, | ) |
| | ) No. 17 C 5730 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| ADVOCATE HEALTH AND HOSPITALS CORPORATION, an Illinois not-for-profit Corporation, and ADVOCATE CHRIST MEDICAL CENTER, an Illinois not-for-profit Corporation, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Mohammed Mahran, an Egyptian Muslim, filed this employment discrimination suit against Defendants Advocate Health and Hospital Corporation ("Advocate Health") and Advocate Christ Medical Center ("Advocate Christ").[1] The Court granted summary judgment to Advocate on Mahran's complaint, except as to claims for religious discrimination based on a failure to accommodate. Doc. 52. Advocate now moves for summary judgment on any religious discrimination claim Mahran has under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, and the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/1-101 *et seq.*, based on Advocate's alleged failure to provide reasonable accommodations with respect to prayer breaks. Because Mahran cannot establish all the elements of a failure to accommodate claim, the Court grants Advocate's motion for summary judgment.

---

[1] The parties do not clearly differentiate between Advocate Health and Advocate Christ, referring generally to Advocate, and they have presented no argument as to treating them separately or collectively aside from noting that Advocate Christ is a division of Advocate Health. The Court collectively refers to the two Defendants as Advocate and does not differentiate between the two in this Opinion, except where the difference is clear.

# BACKGROUND[2]

## I. Mahran's Background and Employment at Advocate

On April 10, 2013, Mahran contacted Rolla Sweis, Advocate Christ's pharmacy director who is Jordanian Orthodox, to apply for a pharmacist position at Advocate. Advocate hired Mahran as a registry pharmacist, effective November 18, 2013. Mahran reported to Judith Brown-Scott, Advocate Christ's pharmacy manager and an African American Christian. Both Sweis and Brown-Scott knew that Mahran was an Egyptian Muslim.

Advocate Christ's pharmacy department includes approximately 150 to 160 pharmacists and technicians. Sweis estimated that about 80% of the pharmacy staff is diverse, and about 90% of that diverse group is Middle Eastern, containing between thirty and forty-five Muslim employees. At the time of Mahran's employment, Branka Milicev, who is Yugoslavian Orthodox, was the clinical manager of the department, and Chris Boyle, a caucasian Christian, was the evening supervisor. Boyle could not discipline, hire, or fire employees, but Mahran did not have direct knowledge of this.

In connection with his onboarding process, Mahran acknowledged receipt of Advocate's Associate Handbook in October 2013. The handbook provides that Advocate employees are to "treat all people with respect, integrity and dignity." Doc. 35 ¶ 16. It also includes information about Advocate's Equal Employment Opportunity policy, general and sexual harassment policy, non-retaliation policy, and reporting mechanisms. Advocate's conflict resolution program encouraged employees to engage in detailed discussions with other employees with whom a

---

[2] The Court assumes familiarity with the facts as laid out in its February 26, 2019, Opinion, Doc. 52, and includes only those facts relevant to the resolution of this motion. All facts are taken in the light most favorable to Mahran, the non-movant.

conflict existed, while also providing different avenues for resolution of conflicts, including focused approaches led by the human resources department, arbitration, and mediation.

Advocate has a corrective action policy that provides for progressive discipline, including level 1 and 2 warnings and a level 3 final warning. Advocate could omit disciplinary steps depending on the seriousness and details of the infraction. Additionally, a supervisor could give employees a performance deficiency notice ("PDN"), which identifies the employee's specific deficiencies, a corrective action plan, a time frame for demonstrating acceptable performance, and the consequences of failing to do so.

Advocate hired Mahran for an initial ninety-day probationary period. His job required him to make certain decisions on his own, which Mahran testified encompassed verifying orders, including after a technician prepared them, providing recommendations to nurses and doctors, and adjusting medications for dose and frequency based on a patient's lab work. Additionally, pharmacists at Advocate considered the appropriateness, safety, and efficacy of patients' drug therapy regimens and provided clinical expertise on pharmaceutical therapy. Initially, Mahran worked both day and night shifts and rotated between the central pharmacy and hospital floors.

On February 24, 2014, upon the conclusion of his probationary period, Brown-Scott evaluated Mahran, giving him an overall rating of meets expectations and the same rating in seven of eight categories. With respect to job accountabilities, Brown-Scott found that Mahran approached expectations, noting that he needed to develop his inpatient pharmacist skills to better oversee drug therapy at the hospital and that he had knowledge deficits arising from his limited exposure to inpatient staffing. She wanted Mahran to take an active role in learning more about the care of critically ill patients and those with a wide range of illnesses.

3

On April 20, 2014, Advocate hired Mahran as a full-time pharmacist. In his August 23, 2014, review, Brown-Scott rated Mahran as meeting expectations while noting that he should "have open and candid communications and handle difficult conversations with the appropriate party when necessary." Doc. 35 ¶ 38. Mahran was disappointed in his April 2015 performance review, which found he met expectations, because he believed he should have received an overall rating of exceeds expectations.

Between August 13, 2015, and April 2016, Mahran received various warnings regarding failures to verify orders and the cherry-picking of orders. Mahran disagreed with these warnings and believed he received them in retaliation for having reported racial and religious discrimination. After Brown-Scott issued a level 3 warning in April 2016 for Mahran's failure to verify a more complicated order despite having received counseling on the issue, Mahran complained to Advocate's human resources department. On April 25, human resources deleted his level 3 warning and noted that a PDN, which Brown-Scott had issued on April 8, would better address Mahran's behavior. The PDN stated that Mahran's failure to consistently demonstrate the expected levels of performance and remedy the identified performance deficiencies within twelve months could lead to his termination. Mahran refused to sign the PDN on April 11 because he disagreed with its substance. The PDN had an initial feedback date of May 9, which Advocate extended, and follow-up meetings occurred on May 5, May 25, and June 18.

On May 4, Mahran again received a level 3 warning, this time for leaving the pharmacy before the relief pharmacist arrived and, therefore, failing to perform the proper hand-off to that pharmacist. Sweis indicated such behavior could cause Advocate to lose its pharmacy license. In response, on May 7, Mahran sent a certified letter and email to Advocate's corporate human

resources department in which he claimed the PDN and May 4 final warning stemmed from religious, racial, and ethnic prejudices. He explained that, with respect to the incident that prompted the May 4 final warning, he had seen the relief pharmacist arriving, left the hand-off information on the computer, and told the lead technician he did so in event that the relief pharmacist did not see the information. Mahran met with Caitlin Malito, a human resources consultant, and Sweis to discuss the May 4 final warning on May 18. Malito did not find evidence that Advocate had failed to follow its policies or procedures in connection with Mahran.

On May 22, Brown-Scott reminded Mahran to work his assigned shifts, including those requiring ICU order oversight, and asked Mahran to seek approval of any schedule change requests so as to ensure he did not remove himself from overseeing ICU orders. Mahran denied seeking to change shifts. Brown-Scott also reassigned Mahran a module on documenting medication histories that she thought would help him comply with the PDN. On June 9, Mahran told Malito that the situation in the pharmacy department was getting worse. Malito sought to schedule a conflict resolution session with Mahran and Sweis. After the session, Mahran learned that Sweis wanted to uphold the final warning. On June 21, Mahran indicated that he wished to proceed before an arbitration panel. Jeremy Sadlier, the human resources director, informed Mahran that a human resources employee would reach out to him to schedule an arbitration panel and that, with respect to Mahran's other complaints, the human resources and pharmacy departments had engaged in appropriate investigations.

Before the arbitration occurred, Advocate terminated Mahran on June 24 for failing his PDN. Neither Mahran nor the human resources department sought to schedule the arbitration after his termination. Mahran disagreed with Advocate's conclusion that he had not met the

PDN requirements, believing instead that Advocate terminated him for complaining about harassment and discrimination.

## II. Alleged Failure to Accommodate Prayer Breaks

Mahran believes that while all employees received two fifteen-minute breaks and a thirty-minute break for lunch, Muslim pharmacy department employees could only take the meal break. He could not recall all of the breaks Muslim pharmacists took, however. Advocate pharmacy management claimed pharmacists should stagger their breaks and communicate with others about the timing of their breaks so that a certain number of people always covered the floors and central pharmacy. Advocate Christ has a number of places where individuals can pray, including a nondenominational chapel, a room available for employees, and a room available specifically on Fridays for Muslim prayer.

According to Mahran, in late 2015, Milicev told Khalil Alwatik to inform all Muslim pharmacists that they could not use their breaks for praying. Mahran did not witness the conversation or any other conversations with management regarding prayer breaks. In December 2015, Sweis sent a message to Sadlier and Malito requesting a meeting to discuss prayer breaks and whether she could "tell [the Muslims in her department] to pray when they get home or they can only do so if it doesn't impact" the pharmacy department. Doc. 35 ¶ 97. Sweis said in her email that Milicev had learned at a legal class that they "are to respect and allow staff the time for prayers," but that to her, "patient care comes first." *Id.* Malito responded that employees could use their break and meal times as they desired but that to the extent leaving the pharmacy department had a negative impact on patient care, Advocate did not have to provide an accommodation.

Sweis, Milicev, Brown-Scott, and Malito never told Mahran he could not take prayer breaks, and he was not overtly disciplined for praying during a break. Once in 2016, however, Boyle prevented him from taking a prayer break and told him not to take further prayer breaks. Mahran received a later lunch break that day and prayed at that time. The day this occurred, only three of the usual four pharmacists were working the shift, and one of them took a meal break about five minutes after Mahran asked for a prayer break. Boyle also gave the other two pharmacists their two fifteen-minute breaks that day.

## III.   Discrimination Charges

On May 6, 2016, Mahran filed a discrimination charge with the Illinois Department of Human Rights ("IDHR"), claiming discrimination on the basis of race, religion, and national origin. The IDHR issued a right to sue letter on May 9, 2017, while the Equal Employment Opportunity Commission ("EEOC") dismissed the charge on December 21, 2017. Mahran filed a second charge with the IDHR on July 19, 2016, alleging retaliation and discrimination based on race, religion, and national origin. The IDHR issued a right to sue letter on the second charge, which Mahran received on or about May 30, 2017. He filed this suit on August 7, 2017.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986).  In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial.  *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).  Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

As discussed in the Court's February 26, 2019, Opinion, the only remaining potentially viable claim Mahran may have is one for Advocate's failure to accommodate his requests for prayer breaks under Title VII and the IHRA.  The parties do not differentiate between the Title VII and IHRA claims, and so the Court analyzes them together.  *See Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (noting that the same framework applies to Title VII and IHRA claims)  Title VII not only prohibits employers from discriminating against employees based on their religion but also requires employers to make reasonable efforts to accommodate the religious practices of employees unless doing so would cause the employers undue hardship.  42 U.S.C.§ 2000e-2(a)(1); *Reed v. Great Lakes Cos.*, 330 F.3d 931, 934–35 (7th Cir. 2003).  Advocate first argues that Mahran cannot bring a failure to accommodate claim because he failed to include such a claim in his complaint.  Advocate further contends that if the Court finds he did properly plead a failure to accommodate claim, the claim goes beyond the scope of his underlying charges and certain complaints are time-barred.  Finally, Advocate maintains that Mahran cannot establish the *prima facie* case required for him to succeed on his failure to accommodate claim.

8

I.    **Pleadings**

Advocate first argues that Mahran did not plead a failure to accommodate claim in his complaint and so cannot pursue it at this stage. But Mahran need only have pleaded facts, not legal theories, in his complaint to place Advocate on notice of his claim. *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014) (citing *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 742 (7th Cir. 2010)).[3] As in *Reeves*, Mahran's complaint placed Advocate on sufficient notice of a religious discrimination claim based on the failure to accommodate, including allegations about Milicev prohibiting Muslim pharmacists from praying in the pharmacy and Boyle's refusal to allow Mahran to take a break for his daily prayers in March 2016. Doc. 1 ¶¶ 38–40; *see Reeves*, 759 F.3d at 701 (plaintiff did not waive failure to accommodate claim where he included relevant facts in the complaint); *cf. Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 851–52 (7th Cir. 2015) (plaintiff waived failure to accommodate claim where he did not include any allegations suggesting a need for accommodations). Therefore, Mahran sufficiently preserved a failure to accommodate claim.

II.   **Scope of Mahran's Charges**

Next, Advocate argues that Mahran cannot proceed on his failure to accommodate claim because it goes beyond the scope of his underlying Charges. A plaintiff "may bring only those

---

[3] In arguing that Mahran did not sufficiently plead a failure to accommodate claim, Advocate misleadingly relies on the district court opinion in *Reeves*, in which the court rejected a failure to accommodate claim based on the plaintiff's failure to include such a claim in their complaint. *See Reeves v. Jewel Food Cos.*, No. 12 C 6919, 2013 WL 6050668, at *2 (N.D. Ill. Nov. 15, 2013). Advocate does not mention that the Seventh Circuit reversed the district court with respect to the waiver of the failure to accommodate claim, with the Seventh Circuit finding instead that the plaintiff's inclusion of a discrimination claim as well as facts relevant to a failure to accommodate claim sufficed to preserve that claim. *See Reeves*, 759 F.3d at 701 ("The district court held that Reeves waived any failure-to-accommodate claim because he did not include it in his complaint. But his complaint did allege a claim for discrimination under ADA . . . . Reeves pled a number of facts relevant to his failure-to-accommodate claim in his complaint. This was sufficient to preserve the argument." (citations omitted)).

claims that were included in his EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)). This requirement is intended to provide the employer with notice of the nature of the claims against it and provide the EEOC and the employer the opportunity to settle the dispute with the employee before the parties turn to litigation. *Id.* An allegation in an EEOC charge reasonably relates to a federal claim if it involves "the same conduct and implicate[s] the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). The relevant inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (quoting *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999)).

Similar to its pleading argument, Advocate contends that Mahran did not specify a failure to accommodate legal theory in his IDHR charges. But he included facts that would reasonably place Advocate on notice of such a theory. His May 6, 2016, IHDR charge discusses Milicev's statement prohibiting Muslim pharmacists from praying and Boyle denying Mahran a prayer break.[4] *See* Doc. 1-1 at 5. These allegations mirror those included in his complaint. Doc. 1 ¶¶ 38–40. Moreover, the IDHR's investigation report indicates that it examined allegations surrounding the alleged failure to accommodate based on the denial of prayer breaks. Doc. 1-1 at 25–28. This clearly establishes that Mahran's charge led to an investigation into the failure to accommodate and so encompassed the present claim before the Court. *See Quinn v. Chicago*

---

[4] Advocate misstates the record as to the May 6, 2016, charge, claiming it does not make any mention of prayer breaks. Doc. 57 at 7. But that charge includes an entire paragraph discussing Advocate's alleged efforts to prevent Muslim pharmacists from praying during work hours. *See* Doc. 1-1 at 5. Advocate may have confused that charge with Mahran's July 19, 2016, charge. *See* Doc. 57 at 7 (indicating that Mahran's July 19, 2016, charge mentions prayer breaks). But the July 19, 2016, charge does not mention prayer breaks but instead focuses on allegations of retaliation. Doc. 1-1 at 9–10.

10

*Transit Auth.*, No. 17 C 3011, 2018 WL 4282598, at *4–5 (N.D. Ill. Sept. 7, 2018) (plaintiff's failure to accommodate claim was reasonably related to claims in charge where further investigation into the charge would lead to the discovery of a failure to accommodate claim).

### III. Timeliness

Advocate next argues that Mahran cannot challenge any actions that occurred 180 days before he filed his IDHR charges. To pursue an IDHR claim, a plaintiff must file charges of discrimination within 180 days of any alleged unfair employment practice.[5] *See* 775 Ill. Comp. Stat. 5/1A-102. Advocate uses the July 19, 2016, charge as the relevant charge, but, as discussed above, Mahran's May 6, 2016, charge discussed prayer breaks and so acts as the relevant charge for determining the timeliness of his claims. Using the May 6, 2016, charge, Mahran's complaints about comments made by Milicev and Sweis in December 2015 fall within the 180-day period and so the Court can consider them, in addition to any other actions that occurred within the 180 days before May 6, 2016.

### IV. Merits

To establish his failure to accommodate claim, Mahran must show that "the observance or practice conflicting with an employment requirement is religious in nature, that [he] called the religious observance or practice to [his] employer's attention, and that the religious observance or practice was the basis for [his] discharge or other discriminatory treatment." *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997). If Mahran establishes a *prima facie* case, the burden shifts to Advocate to make a reasonable accommodation or show that doing so would have resulted in undue hardship. *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012).

---

[5] Although Advocate does not clearly indicate that its timeliness argument only applies to Mahran's IDHR claim, the Court finds it so limited because, in a deferral state like Illinois, a plaintiff has 300 days from the alleged unlawful employment practice to file a charge for purposes of Title VII. 42 U.S.C. § 2000e-5(e)(1).

11

Advocate argues that Mahran cannot establish the three elements of his *prima facie* case.[6] Advocate claims that Mahran fails to meet the first element because Mahran's religious observation did not conflict with his job duties at Advocate. The record provides one possible example of a conflict: Boyle denying Mahran the opportunity to take a prayer break because the pharmacy was short staffed and overloaded. At the same time, Mahran acknowledges he prayed on his lunch break that day. Advocate argues that the fact that Mahran completed his prayers despite Boyle's actions demonstrates that Mahran's work did not conflict with his religious practice but rather just his personal preference for the timing of his prayers, which does not suffice to show a conflict. *See Dachman v. Shalala*, 9 F. App'x 186, 192 (4th Cir. 2001) ("While an employer has a duty to accommodate an employee's religious beliefs, the employer does not have a duty to accommodate an employee's preferences."). Mahran also admits that Sweis, Milicev, Brown-Scott, and Malito did not directly tell him he could not take prayer breaks or use his breaks to pray, and Mahran never received discipline for praying during a break. Again, according to Advocate, this undermines a finding of conflict. Mahran responds that Boyle's denial was not just a one-time occurrence, with supervisors routinely refusing to allow Muslim pharmacists to take breaks so as to allow them to pray five times a day. Mahran also points to a message that Milicev asked Alwatik to pass along to all Muslim pharmacists that they could not use their breaks to pray, as well as discussions involving human resources about when Muslim pharmacists could pray. Although thin, taking the facts in the light most favorable to Mahran, he has at least suggested a disputed issue of fact as to whether his faith requirement of praying five times a day conflicted with his employment requirements. *See Nichols v. Ill. Dep't of Transp.*, 152 F. Supp. 3d 1106, 1120 (N.D. Ill. 2016) (plaintiff's testimony that changes in job conditions

---

[6] Although Advocate claims Mahran cannot meet the second element, it does not focus on this aspect of the *prima facie* case and so neither does the Court.

that meant he could not pray at the same times or in the same places as previously created disputed issue of fact as to whether religious practice conflicted with job requirements).

But Mahran's claim fails because a reasonable juror could not find that Mahran suffered any adverse action for praying during his breaks.[7] Mahran argues that any performance related issues, including his termination, arose after he complained about Advocate's failure to accommodate, creating a disputed issue of fact on this element. But the Court already determined that Mahran cannot rely on his receipt of negative evaluations and placement on a PDN to demonstrate an adverse employment action. Doc. 52 at 22–23. That analysis applies with the same force here. Further, although his termination undoubtedly qualifies as an adverse employment action, Mahran cannot link his religious practice to his termination. Nothing in the record would allow a juror to conclude that Mahran's religious practice factored into the termination decision. *Cf. Hussaini v. G4S Secure Solutions (USA) Inc.*, 379 F. Supp. 3d 679, 684–85 (N.D. Ill. 2019) (finding question of fact on third element where plaintiff testified that supervisor told him he was fired because he could not work on Fridays, a requirement related to his religious practice). Instead, as the Court already found, "the evidence demonstrates that Mahran did not meet Advocate's legitimate expectations—continuing to cherry-pick orders, failing to communicate with his supervisors, and failing to take responsibility during his shift and assist others." Doc. 52 at 27–29. Because Mahran cannot establish that his religious practice

---

[7] The parties do not challenge the Seventh Circuit's delineation of a *prima facie* case for a religious failure to accommodate claim, accepting that Mahran must demonstrate he suffered an adverse employment action because of his religious practice. *See EEOC v. United Parcel Serv.*, 94 F.3d 314, 317 (7th Cir. 1996) (requiring the plaintiff to show "the religious practice was the basis for the adverse employment action"). Although the *Nichols* court questioned that formulation, because the *Nichols* court declined to make a "definitive ruling" on the issue and the parties do not advocate for a different standard, the Court only considers whether Mahran can demonstrate he suffered an adverse employment action because of his religious practice. *See Nichols*, 152 F. Supp. 3d at 1121–22.

13

was the basis for his discharge or other discriminatory treatment, Mahran cannot succeed on his failure to accommodate claim.[8]

## CONCLUSION

For the foregoing reasons, the Court grants Advocate's motion for summary judgment on Mahran's failure to accommodate religion claim [56]. The Court enters judgment for Advocate on the entirety of Mahran's complaint and terminates this case.

Dated: September 16, 2019

SARA L. ELLIS
United States District Judge

---

[8] Because the Court concludes that Mahran cannot establish his *prima facie* case, it need not decide whether providing a reasonable accommodation would have created an undue hardship.